UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

ROSE BONIFACIO,

                               Plaintiff,

   v.                                                    No. 11-CV-779
                                                               (DRH)

COMMISSIONER OF SOCIAL SECURITY,

                               Defendant.

---

**APPEARANCES:**                              **OF COUNSEL:**

PETER M. MARGOLIUS, ESQ.
Attorney for Plaintiff
7 Howard Street
Catskill, New York 12414

HON. RICHARD S. HARTUNIAN                     KATRINA M. LEDERER, ESQ.
United States Attorney for the                Special Assistant United States Attorney
   Northern District of New York
Attorney for Defendant
100 South Clinton Street
Syracuse, New York 13261-7198

**DAVID R. HOMER**
**U.S. MAGISTRATE JUDGE**

### MEMORANDUM-DECISION AND ORDER[1]

Plaintiff Rose Bonifacio ("Bonifacio") brings this action pursuant to 42 U.S.C. § 405(g) seeking review of a decision by the Commissioner of Social Security ("Commissioner") denying her application for benefits under the Social Security Act. Bonifacio moves for a finding of disability and the Commissioner cross-moves for a judgment on the pleadings. Dkt. Nos. 12, 13. For the reasons which follow, the

---

[1] The parties have consented to the jurisdiction of the undersigned in accordance with 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73. Dkt. No. 11.

Commissioner's decision should be affirmed.

# I. Background

## A. Facts

Born on March 9, 1967, Bonifacio was thirty-eight years old when she last applied for disability benefits. T. 125, 130.[2] Bonifacio successfully completed the tenth grade, as well as a six-week program to become a certified nursing assistant ("CNA") at a community college, and around the time of her hearing had begun pursuing her general educational development ("GED") degree as the vocational secretarial programs were full. T. 35-36. Bonifacio previously worked primarily as a cashier and CNA, although she also briefly worked at a fast food restaurant and the Department of Social Services. T. 38-41. Bonifacio alleges disability from multiple impairments including her lower back; right shoulder, hand and knee; left knee; diabetes; heart murmurs; and asthma. T. 31.

## B. Procedural History

On February 17, 2006, Bonifacio filed an application for disability insurance benefits and social security income ("SSI") pursuant to the Social Security Act, 42 U.S.C. § 401 <u>et seq.</u> claiming an alleged onset date of December 13, 2005. T. 116-24. On March 20, 2008, Bonifacio filed a second application for both disability insurance

---

[2]"T." followed by a number refers to the pages of the administrative transcript filed by the Commissioner. Dkt. No. 8.

benefits and SSI claiming an alleged onset date of January 24, 2008.  T. 125-37.  That application was denied on May 27, 2008.  T. 78-89.  Bonifacio requested a hearing before an administrative law judge ("ALJ"), Terrence Farrell, which was held on November 13, 2009.  T. 27-75, 90, 93-112.  In a decision dated November 24, 2009, the ALJ held that Bonifacio was entitled to partial disability benefits. T. 9-26.  Bonifacio's counsel filed a timely request for review with the Appeals Council and on June 14, 2011, the request was denied, thus making the ALJ's findings the final decision of the Commissioner.  T. 1-8.  This action followed.

## II. Discussion

### A.  Standard of Review

In reviewing a final decision of the Commissioner, a court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision.  Berry, 675 F.2d at 467.  Substantial evidence is "more than a mere scintilla," meaning that in the record one can find "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Halloran v. Barnhart, 362 F.3d 28, 31 (2d Cir. 2004) (citing Richardson v. Perales, 402 U.S. 389, 401 (1971) (internal citations omitted)).

"In addition, an ALJ must set forth the crucial factors justifying his findings with sufficient specificity to allow a court to determine whether substantial evidence supports the decision."  Barringer v. Comm'r of Soc. Sec., 358 F. Supp. 2d 67, 72 (N.D.N.Y. 2005) (citing Ferraris v. Heckler, 728 F.2d 582, 587 (2d Cir. 1984)).  However, a court

cannot substitute its interpretation of the administrative record for that of the Commissioner if the record contains substantial support for the ALJ's decision. Yancey v. Apfel, 145 F.3d 106, 111 (2d Cir. 1998). If the Commissioner's finding is supported by substantial evidence, it is conclusive. 42 USC § 405(g) (2006); Halloran, 362 F.3d at 31.

### B. Determination of Disability[3]

"Every individual who is under a disability shall be entitled to a disability. . . benefit. . . ." 42 U.S.C. § 423(a)(1) (2004). Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." Id. § 423(d)(1)(A). A medically determinable impairment is an affliction that is so severe that it renders an individual unable to continue with his or her previous work or any other employment that may be available to him or her based upon age, education, and work experience. Id. § 423(d)(2)(A). Such an impairment must be supported by "medically acceptable clinical and laboratory diagnostic techniques." Id. § 423(d)(3). Additionally, the severity of the impairment is "based [upon] objective medical facts, diagnoses or medical opinions inferable from [the] facts, subjective complaints of pain or disability, and educational

---

[3] While the SSI program has special economic eligibility requirements, the requirements for establishing disability under Title XVI, 42 U.S.C. § 1382c(a)(3)(SSI) and Title II, 42 U.S.C. § 423(d) (Social Security Disability Insurance ("SSDI")), are identical, so that "decisions under these sections are cited interchangeably." Donato v. Sec 'y of Health and Human Servs., 721 F.2d 414, 418 n. 3 (2d Cir.1983) (citation omitted).

background, age, and work experience." Ventura v. Barnhart, No. 04-CV-9018(NRB), 2006 WL 399458, at *3 (S.D.N.Y. Feb. 21, 2006) (citing Mongeur v. Heckler, 722 F.2d 1033, 1037 (2d Cir. 1983)).

The Second Circuit employs a five-step analysis, based upon 20 C.F.R. § 404.1520, to determine whether an individual is entitled to disability benefits:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he [or she] is not, the [Commissioner] next considers whether the claimant has a 'severe impairment' which significantly limits his [or her] physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him [or her] disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a 'listed' impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he [or she] has the residual functional capacity to perform his [or her] past work. Finally, if the claimant is unable to perform his [or her] past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982). The plaintiff bears the initial burden of proof to establish each of the first four steps. DeChirico v. Callahan, 134 F.3d 1177, 1179-80 (2d Cir. 1998) (citing Berry, 675 F.2d at 467). If the inquiry progresses to the fifth step, the burden shifts to the Commissioner to prove that the plaintiff is still able to engage in gainful employment somewhere. Id. at 1180 (citing Berry, 675 F.2d at 467).

### C. ALJ Farrell's Findings

Bonifaco, represented by counsel, testified, along with vocational expert Jay

Steinbrenner, at the hearing held on November 13, 2009.  T. 27-75 (transcript from the administrative hearing); 14.  Using the five-step disability sequential evaluation, the ALJ found that Bonifacio (1) had not engaged in substantial gainful activity since January 24, 2008, the alleged onset date; (2) had the following medically determinable impairments, asthma, heart murmur, knee osteoarthritis, history of lower back and right shoulder disorder, and obesity; (3) did not have an impairment, alone or in combination, sufficient to meet the listed impairments in Appendix 1, Subpart P of Social Security Regulation Part 404; (5) "from January 24, 2008 through March 4, 2009, considering [Bonifacio]'s age, education, work experience, and residual functional capacity, there were no jobs that existed in significant numbers in the national economy that [she] . . . could have performed," and thus was under a disability during that time period; (6) was no longer disabled after a medical improvement which occurred March 5, 2009; (7) maintains the Residual Functional Capacity ("RFC") to

> perform sedentary work . . . except, although she was able to perform the requirements of sitting, standing and walking; her standing and walking was limited to about fifteen minutes at one time, and sitting was limited to about thirty minutes at one time.  She continued without the ability to climb ladders, ropes, or scaffolds and can only occasionally climb stairs and ramps.  She needs to avoid concentrated exposure to known respirator irritants and should never perform overhead reaching with her dominant right upper extremity;

and thus, (8) given her age, education, work experience, and RFC, was still able to perform work which existed in significant numbers in the national economy.  Therefore, a determination of not disabled was made.

### D.  Bonifaco's Contentions[4]

Bonifacio contends that the ALJ erred in relying on the vocational expert's ("VE") testimony.  Bonifacio argues that the VE's testimony regarding her abilities in light of her limited reading and writing scores contradicts the information provided in the Dictionary of Occupational Titles ("DOT").  Dkt. No. 12.

The ALJ conducted his Step Five analysis.  The ALJ may apply the Grids or consult a VE.  See Heckler v. Campbell, 461 U.S. 458, 462 (1983); Rosa v. Callahan, 168 F.3d 72, 78 (2d Cir. 1999); 20 C.F.R. pt. 404, subpt. P, App. 2 (2003).  Here, a VE was questioned.

> A hypothetical question that does not present the full extent of a claimant's impairments cannot provide a sound basis for vocational expert testimony . . . [thus i]f a hypothetical question does not include all . . . impairments, limitations and restrictions . . . a [VE's] response cannot constitute substantial evidence to support a conclusion of no disability.

Pardee v. Astrue, 631 F. Supp. 2d 200, 211 (N.D.N.Y. 2009) (citations omitted).

At the hearing, Bonifacio's counsel indicated that he had brought Bonifacio's test results in connection with an initial screening for her GED course.  T. 30.  The test results included two sets of scores for math and reading.  T. 198-201.  The first test results indicated Bonifacio's performance at an eighth grade level in reading and a sixth to seventh grade level in math.  T. 198-99.  The second set reflected a decreased performance in both reading and math to an average fifth grade level.  T. 200-01.

---

[4] Bonifacio does not dispute the ALJ's findings with respect to which impairments were classified as severe and whether or not the identified impairments met the Listings.  Additionally, Bonifacio only disputes the RFC findings to the extent that she feels her testing scores should have caused the ALJ to rely upon the hypothetical her counsel provided to the VE.  Accordingly, further discussion regarding the nature or severity of her impairments or exertional RFC limitations are moot.

However, there was no additional information submitted explaining the manner of testing or the reason for the discrepancies between the two seemingly identical testing methods.

During his questioning of the VE, the ALJ presented a hypothetical question of an individual between forty and forty-two years of age with Bonifacio's tenth grade completed education, the ability to "frequently lift, carry, push, and pull less than [ten] pounds[;] . . . standing and walking are limited to two hours in a work day with normal breaks.  And the person could never reach over her head with the right, dominant, upper extremity." T. 68.  There were no restrictions based on literacy or math abilities. The VE concluded that the individual would be restricted to sedentary employment such as a ticket seller, telephone marketer or solicitor, or telephone surveyor.  T. 68-71.  All jobs existed in significant numbers in both the national and local economy.  Id.  When Bonifacio's counsel examined the VE, the discussion was:

> Q   . . . if it was determined that that individual's education level was limited . . . [to] a reading level at the eighth grade level, and math level between the sixth and the seventh grade level, would that impact those positions at all?
>
> A   Well, reading at the eighth grade level shouldn't be a problem, in that, typically, your newspapers – if you look at a daily publication newspaper, they're [INAUDIBLE] like a seventh to eight grade level.
>
> So as long as she could read a newspaper, the thing she'd be required to read in these jobs wouldn't be any more demanding than that.
>
> Q   Okay.  Are there math skills involved in any of the positions that you - -
>
> A   Well, the ticket seller, you would have to be able to

8

>       count change. [INAUDIBLE] calculator, of course, on
>       the register itself, but you would have to be able to
>       count change, yes.

T. 73-74.

The ALJ failed to include any educational limitation for decreased reading or writing in Bonifacio's RFC, which Bonifacio contends was an error.  Bonifacio's counsel's questioning of the VE demonstrated that so long as Bonifacio could perform the duties of a cashier, particularly providing change to customers, and read the newspaper, she would be able to perform the jobs which the VE identified.  Presently, Bonifacio's counsel contends that her limitations are more severe than those which were proffered during the VE's testimony and that these more restrictive limitations, skills limited to a fifth grade level, represent the true depiction of her disability.

First, Bonifacio misstates the evidence to describe a conflict which does not exist.  As previously stated, Bonifacio's counsel presented a hypothetical question regarding an individual with eighth-grade reading and sixth to seventh-grade math skills. In the motion papers, however, Bonifacio's counsel contends the restrictions were regarding a fifth grade level of comprehension, in both reading and math, but those restrictions were not presented to the VE.  In fact, the math and reading levels for the identified jobs were consistent with Bonifacio's performance at those levels, so there was no inconsistency to resolve.[5]

---

[5] The VE's testimony indicated that the Ticket Seller required math and language levels of 2; Telephone Solicitor required math and language levels of 3; and Telephone Surveyor required a language level of 2 and math level of 1. Def. Mem. of Law (Dkt. No. 13) at 10; Pl. Mem. of Law (Dkt. No. 12) at 4.  Bonifacio's prior position as a CNA required a language level of 3 and math level of 2 (Def. Mem. of Law at 10), which indicates that she could perform both the Ticket Seller and Telephone Surveyor

Second, the conclusions of the ALJ reject such stringent restrictions, as he failed to include any such restrictions in his RFC.  The ALJ's decision not to include such limitations, particularly that Bonifacio only retained math and reading skills of a fifth-grader, was appropriate considering that those restrictions were not supported by the record.  Dumas v. Schweiker, 712 F.3d 1545, 1554 (2d Cir. 1983) (holding that there must be "substantial record evidence to support the assumption upon which the vocational expert based his or her opinion.").  The record indicated that Bonifacio's previous employment consisted of being a (1) cashier, which she reported successfully performing for approximately two decades, primarily at grocery stores, which included providing customers with change, and (2) CNA.  T. 38-41, 155.  The abilities required to successfully complete these positions were consistent with the job duties within the positions identified by the VE.  Moreover, Bonifacio successfully completed the tenth grade, as well as receiving additional training at a community college to become a nursing assistant.  Such achievements indicate abilities superior to those of a fifth-

---

positions as they required skills comparable or less than those required for her prior employment.  Additionally, the language skills for both the Telephone Solicitor and nursing assistant were comparable.  Moreover, the VE testified that based on his experience, Bonifacio's prior work as a cashier would render her as a suitable employment candidate for all aforementioned positions.  Reliance on the VE's experience is appropriate.  Lind v. Astrue, 530 F. Supp. 2d 456, 463 (W.D.N.Y. 2008) (citations omitted).  Lastly, it is important to note that

> [t]he DOT lists the *maximum* requirements of occupations as generally performed, not the range of requirements of a particular job as it is performed . . . [thus i]t is . . . illogical to conclude that the DOT's apparent literacy requirement trumps the testimony of a VE, especially when that VE was asked a proper hypothetical . . . .

Priel v. Astrue, No. 08-CV-213, 2010 WL 184329, at *3 (W.D.N.Y. Jan. 15, 2010) (internal quotation marks and citations omitted).

grader.  Additionally, the only evidence of a fifth grade level of comprehension was vague and directly contradicted by identical test results which indicated an eighth grade level of reading comprehension and sixth to seventh grade level of math comprehension.  Such inconsistencies fail to support a more stringent restriction.

Despite the fact that the ALJ failed to include such restrictions, they were still addressed, and then refuted based on the aforementioned reasons, in the ALJ's decision.  T. 25.  Bonifacio's contentions that the ALJ was required to consider more restrictions, or incorporate them into the VE's questioning is meritless.  See Bossey v. Comm'r of Soc. Sec., No. 07-CV-116 (LEK/VEB), 2009 WL 1293492, at * 12 (N.D.N.Y. May 5, 2009) ("Moreover, an ALJ is not required to include limitations in hypotheticals that are not supported by substantial evidence in the record.") (internal quotation marks and citations omitted).

As substantial evidence supports the RFC findings which served as the basis of the aforementioned hypothetical question, including the omission of any math or literacy restrictions, the ALJ appropriately relied upon the VE's testimony in concluding that Bonifacio could continue to work and find substantial gainful activity.  See Stenoski v. Astrue, No. 07-CV-552 (FJS/VEB), 2009 WL 6055830, at *11 (N.D.N.Y. July 23, 2009) (explaining that the VE's opinion regarding disability may be relied upon by the ALJ if the factors in the hypothetical are supported by substantial evidence) (citations omitted). This satisfied the Commissioner's burden at Step Five of the analysis.  As substantial evidence supports the ALJ's conclusions, remand for a calculation of benefits is unwarranted.

Accordingly, for these reasons, the Commissioner's decision on this issue is

affirmed.

### III. Conclusion

For the reasons stated above, it is hereby **ORDERED** that the Commissioner's decision denying disability benefits is **AFFIRMED**.

DATED: August 3, 2012
       Albany, New York

_____
David R. Homer
U.S. Magistrate Judge